619 F.2d 623
 14 ERC 1281, 10 Envtl. L. Rep. 20,323
 PEOPLE OF the STATE OF ILLINOIS, Plaintiff-Appellant,
v.
OUTBOARD MARINE CORPORATION, INC., a Delaware Corporation,
Defendant-Appellee.
UNITED STATES of America, Plaintiff,
v.
OUTBOARD MARINE CORPORATION, Defendant and Third Party
Plaintiff-Appellee, and
Monsanto Company, Third Party Defendant.
Appeal of PEOPLE OF the STATE OF ILLINOIS, Proposed Intervenor.
 Nos. 79-1341, 79-1725.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 26, 1979.
Decided March 28, 1980.
As Amended on Denial of Rehearing and Rehearing En Banc
April 29, 1980.
 
 Bruce A. Featherstone, Kirkland & Ellis, Chicago, Ill., for third party defendant.
 Jeffrey C. Fort, Chicago, Ill., for defendant and third party plaintiff-appellee.
 John Van Vranken, Asst. Atty. Gen., Chicago, Ill., for proposed intervenor.
 Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,* and TONE, Circuit Judge.
 WISDOM, Senior Circuit Judge.
 
 
 1
 The first of these two consolidated appeals involves a question of federal common law: Does a state have a federal common law cause of action for nuisance against an in-state pollution source? We hold that it does have such a cause of action to prevent pollution of interstate or navigable waters. The second appeal concerns an attempt by the state to intervene in a suit by the federal government against the offending company. We hold that in the interest of the people of Illinois the State has the right to intervene in the federal suit.
 
 
 2
 On August 10, 1978, the Attorney General of the State of Illinois brought this action on behalf of the People of Illinois in federal district court against Outboard Marine Corporation (OMC), alleging that at least since January 1, 1959, OMC had discharged highly toxic polychlorinated biphenyls (PCBs)[1] from its Waukegan, Illinois manufacturing facility[2] into the North Ditch (a tributary of Lake Michigan), Waukegan Harbor, and Lake Michigan. The State alleged that the PCBs had accumulated in the bottom sediments of the receiving waters, causing contamination at levels that damaged aquatic life, bird life, and water quality, threatened the health and welfare of residents of Illinois, and impaired the usefulness of the Lake as a public water supply and place of recreation.[3] The State sued under the federal common law of nuisance and the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251 et seq. For good measure, the State added several pendent claims based on Illinois law.[4] The complaint asked for an injunction restraining OMC from further discharging PCBs from OMC's Waukegan facility; a mandatory injunction directing OMC to study removal and disposal methods for the accumulated PCB-contaminated sediments; a mandatory injunction directing OMC to remove and dispose of the PCB-contaminated sediments in the North Ditch, Waukegan Harbor, and Lake Michigan; and a similar injunction requiring removal of PCB-contaminated soil. The complaint also asked for civil penalties.
 
 
 3
 On October 2, 1978, OMC filed a motion to dismiss the complaint. The court granted the motion on February 2, 1979. The district judge recognized that "there is indeed federal jurisdiction over a claim based on the federal common law of nuisance". Taking an unnecessarily narrow view of Illinois v. Milwaukee, 1972, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712, however, the court held that the federal common law count failed to state a claim upon which relief could be granted because this case "involves a controversy between two Illinois residents". There was "no allegation of injury to or from another state". The court ruled that it had no jurisdiction over the FWPCA claim because Illinois had not given the required 60 days notice to the Administrator or to the defendant. The State did not appeal this ruling. Finally, because the federal claims had been dismissed, the court rejected pendent jurisdiction.
 
 
 4
 Meanwhile on March 17, 1978, the United States filed a complaint in federal district court against OMC, also alleging PCB-contaminated discharges into the three bodies of water. The action was brought under the Refuse Act, 33 U.S.C. § 407, the FWPCA, and the federal common law of nuisance. The court was asked to enjoin further contamination by requiring OMC to dredge and safely dispose of the PCB-contaminated sediments and to pay civil penalties. This suit was assigned to the district judge who was handling the other suit.[5]
 
 
 5
 On March 23, 1979, the Attorney General of Illinois filed a motion for leave to intervene in the federal suit, giving three reasons for intervention. (1) The State had a statutory right to intervene under § 505(b)(1)(B) of the Clean Water Act of 1977, 33 U.S.C. § 1365(b)(1)(B). See Fed.R.Civ.P. 24(a)(1). (2) It had the right to intervene because of its special interest in the litigation and the inability of the United States to represent adequately that interest. See Fed.R.Civ.P. 24(a)(2). (3) The State should be permitted to intervene because its claim had questions of law and fact in common with the federal government's contentions. See Fed.R.Civ.P. 24(b). On May 29, 1979, the district judge denied the motion for leave to intervene.[6]
 
 
 6
 The Attorney General appeals in both suits. The United States filed an amicus brief in favor of the intervention.
 
 I.
 
 7
 Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, held that there is no general federal common law. The same day the Supreme Court decided Erie it laid the groundwork for a "specialized common law".[7] See Hinderlider v. La Plata River & Cherry Creek Ditch Co., 1938, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202. Since that time courts have fashioned federal common law "when there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism". Illinois v. Milwaukee, 406 U.S. 91, 105 n.6, 92 S.Ct. 1385, 1393, 1394 n.6, 31 L.Ed.2d 712. The doctrine has been applied to areas of the law as diverse as obligations by or to the United States,[8] suits on labor contracts affecting commerce,[9] unfair competition in or affecting interstate commerce,[10] and regulation of the activities of interstate carriers.[11] In 1972 the Court formulated a federal common law of nuisance.[12] Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712. The decision in the instant case turns on the broad policy considerations expressed in Illinois v. Milwaukee.
 
 
 8
 The nation has a basic overriding federal interest in interstate and navigable waters and in developing a uniform program of protecting these national resources from pollution. The Federal Water Pollution Control Act made this interest explicit. The federal common law of nuisance fills the interstices in the Act.[13]
 
 
 9
 There is nothing in the Supreme Court's reasoning in Illinois v. Milwaukee to indicate that it attached any weight to the fact that the pollution came from an out-of-state source. The Court declined to take original jurisdiction but held that the district court had jurisdiction because, under 28 U.S.C. § 1331, the case was one that "arises under the Constitution, laws, or treaties of the United States". The Court phrased the question:
 
 
 10
 The question is whether pollution of interstate or navigable waters creates actions arising under the "laws" of the United States within the meaning of § 1331(a). We hold that it does; and we also hold that § 1331(a) includes suits brought by a State.
 
 
 11
 406 U.S. at 99, 92 S.Ct. at 1390. "s 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." Id. at 100, 92 S.Ct. at 1391. Writing for a unanimous Court, Mr. Justice Douglas stated, "When we deal with air and water in their ambient or interstate aspects, there is a federal common law . . . ." Id. at 103, 92 S.Ct. at 1392. Furthermore, the Supreme Court repeatedly expressed its intention to extend the application of federal common law to public nuisances caused by the pollution of either "interstate or navigable waters". Id. at 99, 102, 104, 92 S.Ct. at 1390, 1392, 1393.
 
 
 12
 In view of the obvious interstate character of Lake Michigan, we are not so bold as to assume that Mr. Justice Douglas might have been careless in his choice of words and that other members of the Court failed to notice implications of the term "navigable waters". In addition, so the Court stated, federal common law would apply regardless of the jurisdictional amount, id. at 98, 92 S.Ct. at 1390, or of the "character" of the parties, id. at 105 n.6, 92 S.Ct. at 1393, 1394 n.6. "(W)here there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law." Id. The Court noted the existence of the Federal Water Pollution Control Act and was aware of the interstices and deficiencies in federal statutes.
 
 
 13
 It may happen that new federal laws and new federal regulations may in time pre-empt the field of federal common law of nuisance. But until that comes to pass, federal courts will be empowered to appraise the equities of the suits alleging creation of a public nuisance by water pollution . . . There are no fixed rules that govern; these will be equity suits in which the informed judgment of the chancellor will largely govern.
 
 
 14
 Id. at 107, 92 S.Ct. at 1395.
 
 
 15
 The Court's use of the term "navigable waters" significantly suggests the breadth of the holding,[14] for that term includes both the territorial seas and purely intrastate waters having no necessary interstate impact. The Federal Water Pollution Control Act applies to "interstate or navigable waters", and this Court has recently noted that "(i)n applying the federal common law of nuisance in a water pollution case, a court should not ignore the Act but should look to its policies and principles for guidance". Illinois v. Milwaukee, 7 Cir. 1979, 599 F.2d 151, 164; accord, Committee for Consideration of Jones Falls Sewerage Sys. v. Train, 4 Cir. 1976, 539 F.2d 1006, 1013 (Butzner, J., dissenting). There is no language in the Supreme Court's opinion to suggest that the predicate for the decision is one state's adversely affecting the environment or ecology of another. That sort of extraterritorial effect may often occur when an interstate body of water is polluted, but the Court's express language seems to base the holding on the national interest in "interstate or navigable waters". States have, of course, an interest in waters within their borders, but "it is federal, not state, law that in the end controls the pollution of interstate or navigable waters". Id. at 102, 92 S.Ct. at 1392. "Thus, the Supreme Court in Illinois v. Milwaukee intended to do more than merely provide a forum for controversies between states." Note, Federal Common Law Remedies for the Abatement of Water Pollution, 5 Fordham Urb.L.J. 549, 557 (1977). Basically, the Supreme Court established, under federal common law, a right in tort for the pollution of interstate and navigable waters.
 
 
 16
 Pollution of any large lake or long river body of water has, of course, obvious interstate effects. Fish swim. As the Supreme Court pointed out, the "demands for applying federal law are present in the pollution of a body of water such as Lake Michigan, bounded, as it is, by four states". 406 U.S. at 105 n.6, 92 S.Ct. at 1394 n.6. But the term "interstate or navigable waters" encompasses all federal waters, even tributaries of intrastate navigable waters. (Emphasis added). Federal concern is not just in navigability but in the purity and quality of the waters. This is reflected in the expanded concept of "navigable waters".[15] It is explicit in the goal of the 1972 amendments "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters". 33 U.S.C. § 1251(a). States too have a stake in clean water. It is in keeping therefore with the national program of protecting federal waters for the states to be allowed to sue one who has committed the federal tort of polluting federal waters within the state or on which the state borders. The applicable law, however, is federal and it should be uniform.[16] The following provisions of the 1972 amendments to the Federal Water Pollution Control Act show the national policy favoring uniformity: 33 U.S.C. § 1251(a) (establishing national goals for the elimination of pollution); § 1316(c) (allowing state enforcement if its standards comply with federal regulation); § 1319(a)(2) (allowing the Administrator to enforce pollution limitations if a state defaults); § 1370 (providing that no state standard may be less stringent than the federal regulations).
 
 
 17
 Two courts of appeals have recognized that the federal common law gave rise to a cause of action on the facts presented in Illinois v. Milwaukee, but concluded that the federal common law should not be applied to intrastate pollution of navigable waters. Reserve Mining Co. v. Environmental Protection Agency, 8 Cir. 1975, 514 F.2d 492; Committee for Consideration of Jones Falls Sewerage Sys. v. Train, 4 Cir. 1976, 539 F.2d 1006.
 
 
 18
 In Reserve Mining, the court construed Illinois v. Milwaukee as applying only to instances when the pollution source of one state harmed the environment of another. The court found that the evidence showed that the polluted air in Minnesota villages was affected only by the waste emanating from Minnesota; there were no extraterritorial pollutive effects. Accordingly, the court rejected the federal common law nuisance action to prevent the air pollution.
 
 
 19
 The Fourth Circuit reached a similar result in Jones Falls. There a group of Maryland residents living near Jones Falls sought to enjoin the grant of new sewerage hookups to the existing Baltimore sewerage system which was already dumping a substantial amount of raw sewerage into Jones Falls. Jones Falls is an intrastate navigable waterway. The court refused to apply federal common law since there was no interstate controversy. In a strong dissent, id. at 1010 (Butzner, J., dissenting), Judge John Butzner, relying on Illinois v. Milwaukee, urged that the national interest in keeping all navigable waters clean gave rise to a federal common law action of nuisance enforceable by a private citizen, as contemplated by the 1972 amendments. The dissent also reasoned that the protection of such interstate resources as Chesapeake Bay could best be achieved by preventing the discharge of pollutants into tributaries, whether intrastate or interstate navigable waters.
 
 
 20
 Those two decisions are distinguishable in that in each case the court found that the pollution had only an intrastate effect. Here, of course, the four states bordering on Lake Michigan are all affected, although only Illinois has sued OMC. But we do not base our decision on this distinction. With due deference to the courts deciding those cases, we disagree with the rationale they adopted.* As we read Illinois v. Milwaukee, the Supreme Court explicitly recognized a federal common law action to abate pollution in "interstate or navigable waters". There is no basis for putting a gloss on the Supreme Court holding that would restrict its application to situations in which one state complains of damages to its environment or ecology by a pollution source in another state.
 
 
 21
 Although we have never decided whether such a suit can be brought, we did come to the edge of the question in Stream Pollution Control Board v. United States Steel Corp., 7 Cir. 1975, 512 F.2d 1036. There an Indiana administrative body attempted to use federal common law to abate pollution of the Grand Calumet River, a navigable stream and tributary of Lake Michigan. We refused to decide whether the complaint stated a cause of action for which relief could be granted, but did hold that "the complaint raises substantial questions which only a federal court may finally answer". Id. at 1040. We commented that "(s)urely enough has been alleged to give the district court jurisdiction to decide whether the Board is entitled to some relief as a matter of federal common law". Id.
 
 
 22
 In another case a district court allowed Illinois and the United States jointly to maintain a federal nuisance action against United States Steel Corporation, restraining it from discharging wastes into Lake Michigan from its Waukegan, Illinois plant. United States ex rel. Scott v. United States Steel Corp., N.D.Ill.1973, 356 F.Supp. 556. The complaint had no allegation of an out-of-state effect. The court held that the 1972 amendments of the Federal Water Pollution Control Act did not oust the federal courts from their federal common law jurisdiction; they amplify and supplement existing remedies. The court noted the federal government's "undoubted right to intervene to protect the navigable waters from pollution" and the "obvious interest" of Illinois in the "purity and recreational value of Lake Michigan". Id. at 558.
 
 
 23
 In United States v. Ira S. Bushey & Sons, Inc., D.Vt.1972, 346 F.Supp. 145, aff. mem. 2 Cir. 1973, 487 F.2d 1393, cert. denied, 1974, 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146, the federal district court refused to dismiss the federal government's claim grounded in the federal common law of nuisance though its complaint asserted no interstate effect. The court said that the United States may sue to protect the "national interest in the quality of air and water in their ambient or interstate aspects". Id. at 149.
 
 
 24
 In this suit we again have pollution of Lake Michigan. We again have pollution of an interstate body of water, fed by many tributaries. One state's lax pollution standards should not prevent vigorous efforts by the federal government and by other states to prevent pollution of Lake Michigan. Forbidding Illinois to invoke federal nuisance law would create the anomaly that three states bordering Lake Michigan may sue to prevent pollution emanating from Illinois, but Illinois itself may not bring such an action.
 
 
 25
 There are several practical reasons for giving Illinois the right to sue in federal court. First, let us assume that there are two plants, one on each side of the Illinois-Wisconsin border, each pouring the same type of pollution into Lake Michigan. OMC's contention would require Illinois to file one suit in Illinois court and one in federal court. Each polluter could argue that most or all of the pollution harming Illinois is coming from the other plant, and therefore that Illinois should not be granted an injunction. Bringing a single action against both defendants in one forum would prevent them from hiding behind each other. Second, allowing suit here could promote economy of judicial administration as well as uniformity in result. Aside from allowing Illinois to sue in-state and out-of-state polluters in the same suit, it would allow a state and the federal government to sue together to prevent pollution in that state. In this controversy, we have Illinois's suit in federal court, a subsequent federal government suit in federal court, a suit by OMC against the Environmental Protection Agency to decide what remedial steps, if any, should be taken to remedy sediments in Waukegan Harbor and the North Ditch, and an Illinois administrative proceeding initiated by OMC concerning the appropriate terms and conditions for a permit for the Waukegan facility. Additionally, Illinois could file suit in state court against OMC under its statutes and the common law of nuisance. Permitting Illinois to sue OMC in federal court under the federal common law of nuisance would allow consolidation of the suits brought by the United States and by Illinois (and possibly the suits brought by OMC), thus conserving scarce judicial resources and ensuring a single result. Multiple suits may lead to contradictory results, thus necessitating more litigation to sort out all of the inconsistencies. Third, permitting a state to sue in federal court could ensure that competition for industry between states does not prevent vigorous state enforcement against pollution. If a state develops a strong state common law of nuisance and enforces it vigorously, industry may flee to another state. If, on the other hand, a state sues in federal court and aids development of a comprehensive federal law of nuisance, the law can be enforced against polluters no matter where the pollution originates.
 
 
 26
 National uniformity of pollution standards finds partial legislative expression in the 1972 amendments, which provide for promulgation of pollution guidelines and require federal approval of state discharge permits. There is no serious conflict, however, between the states and the federal government. Consistent with the amendments' avowed purpose of preserving and protecting the primary responsibilities of the states, see 33 U.S.C. § 1251(b), the states may impose more restrictive standards than those imposed by the federal government.
 
 
 27
 We conclude, based on Illinois v. Milwaukee and the Federal Water Pollution Control Act, that there is an overriding federal interest in preserving, free of pollution, our interstate and navigable waters. When a pollution controversy arises, it is immaterial whether there is a showing of extraterritorial pollution effects. The issue is whether the dispute is a matter of federal concern. When it is, as in this case, federal courts should be accessible. The effect of the federal common law of nuisance is to fill the statutory interstices and to provide uniformity in controlling water pollution in either interstate or navigable waters or the United States. There is no strain on federalism. The State of Illinois and the federal government see eye to eye and in United States v. OMC are attempting to work shoulder to shoulder to their mutual interest in clean water.
 
 II.
 
 28
 Illinois urges three grounds for intervention in the suit by the United States against OMC, only the first of which we need consider. Fed.R.Civ.P. 24(a)(1) allows intervention "when a statute of the United States confers an unconditional right to intervene". See generally C. Wright & A. Miller, 7A Federal Practice and Procedure § 1906 (1972).
 
 
 29
 The FWPCA provides for intervention in the following circumstance:
 
 
 30
 (b) No action may be commenced
 
 
 31
 (1) under subsection (a)(1) of this section(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
 
 
 32
 33 U.S.C. § 1365(b)(1)(B). A "citizen" is "a person or persons having an interest which is or may be adversely affected". Id.. § 1365(g). A "person" includes a state. Id. § 1362(5); see Massachusetts v. United States Veterans Administration, 1 Cir. 1976, 541 F.2d 119, 121 n.1. The terms "standard" and "limitation" are defined in § 1365; these include "effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of (the FWPCA)". 33 U.S.C. § 1365(f)(1). Section 1311(a) provides: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this Act, the discharge of any pollutant by any person shall be unlawful." Count II of the complaint alleges that "OMC's continuing discharge of PCB was not in compliance with Section 402 of the (Clean Water) Act, 33 U.S.C. 1342, and therefore violated the prohibition of Section 301(a) of the (Clean Water) Act, 33 U.S.C. 1311(a)."
 
 
 33
 OMC argues, first, that there can be no violation absent promulgation of an effluent standard or limitation by E.P.A. and specific inclusion of such standard or limitation in a permit. Stream Pollution Control Bd. v. United States Steel Corp., 7 Cir. 1975, 512 F.2d 1036, 1042. That case did not involve an alleged violation of § 402; it involved a violation of the federal common law of nuisance and of § 1311, which provides a timetable for the promulgation of various effluent limitations. Because the deadline had not passed in that case, the intervenors' only statutory argument was that the steel facility could not discharge any pollution until the standard had been promulgated. The Court rejected that argument, stating that the defendant was in compliance with the statute unless it violated a statutory provision, and that it could not violate a standard before the standard was established. The express congressional goal of step-by-step reduction of pollution makes it unlikely and illogical that Congress intended to prohibit all pollution until the standards were fixed. The present suit does not charge a violation of any standards; instead, it involves a violation of a permit issued by the Environmental Protection Agency. This Court has held that promulgation of a separate effluent standard or limitation is not a prerequisite to enforcement of a permit under § 1342. "(T)he obligations imposed on an individual discharger by the permit are enforceable according to the statutory timetable whether or not they are based on previously issued guidelines." United States Steel Corp. v. Train, 7 Cir. 1977, 556 F.2d 822, 854-55.
 
 
 34
 Second, OMC cites a recent case in which this Court held that the citizen suit provision "does not provide for suits against parties alleged to have violated an effluent standard or limitation in the past or for recovery of damages". Evansville v. Kentucky Liquid Recycling, Inc., 7 Cir. 1979, 604 F.2d 1008, 1014. This suit alleges current PCB pollution. Admittedly, the federal government seeks only an injunction to require dredging because it has instituted administrative proceedings to deal with present PCB pollution by OMC. The complaint, however, states that the injunctions sought are designed to prevent further contamination of the bodies of water, and it leaves the door open for the court to grant "such other and further relief as it deems just and proper". Besides, once the federal government asserts that PCB is a dangerous substance and that OMC is currently discharging a dangerous amount of PCBs, parties that are affected by this pollution should have a right to intervene to seek abatement even if the federal government is principally concerned with past pollution. Evansville does not forbid intervention to halt continuing or future violations.
 
 
 35
 The right of the State of Illinois to intervene is both practical and desirable. Congress made clear in the FWPCA that the states have a vital role in the elimination of pollution: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b). The Illinois Environmental Protection Agency has been given the power to issue permits under § 1342, the section at issue in this case. That agency must also certify approval or waive any objection before the dredging requested by the federal government can take place. Id. § 1341; see Minnesota v. Hoffman, 8 Cir. 1976, 543 F.2d 1198, 1204. State law requires permits for dredging, see Ill.Rev.Stat. ch. 19, § 65, and for water pollution control devices, see Ill.Rev.Stat. ch. 1111/2, §§ 1012(b) & 1039. On intervention of Illinois, the court will be able to consider interests and views of the State, and perhaps simplify and shorten subsequent state procedures.
 
 
 36
 Because we hold that the FWPCA allows intervention of right, we need not consider whether Illinois has a right to intervene because of its special interest, see Fed.R.Civ.P. 24(a)(2), or whether permissive intervention is proper, see Fed.R.Civ.P. 24(b).
 
 III.
 
 37
 Illinois asked to intervene in the federal suit after its own suit was dismissed. On oral argument its attorney was unsure whether it would want to remain in the federal suit if its suit was revived. The choice is of course up to Illinois. If both suits are pursued, we leave to the sound discretion of the district court the decision whether the actions should be consolidated.
 
 
 38
 These cases are REVERSED and REMANDED.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation
 
 
 [1]
 PCBs are highly toxic chemical mixtures that are heat and flame resistant. The complaint alleged that hydraulic fluids used by OMC from 1959 until 1972 contained the PCBs, and that these fluids were still draining into the receiving waters through OMC's waste-water collection and disposal system
 
 
 [2]
 The facility is located approximately 10 miles south of the Wisconsin border. It manufactures outboard motors and their component parts
 
 
 [3]
 The complaint alleged that in some portions of Waukegan Harbor and its tributaries PCBs currently comprise as much as 25 percent of the bottom sediments
 
 
 [4]
 The state law counts are based on the Illinois Public Nuisance Act, the Illinois Environmental Protection Act, the Illinois common law of nuisance, and the Illinois common law of trespass
 
 
 [5]
 On October 10, 1978, the district judge ordered the two cases consolidated for discovery. On November 16, 1978, OMC filed a third party complaint against Monsanto, the company manufacturing the hydraulic fluids for OMC
 
 
 [6]
 Although the United States did not oppose Illinois's intervention, OMC did. Interestingly, at one time OMC contended that the federal suit should be dismissed because it did not join a necessary party, the State of Illinois
 
 
 [7]
 The term "specialized common law" was coined by Judge Henry Friendly in his classic article on Erie and federal common law. Friendly, In Praise of Erie and of the New Federal Common Law, 39 N.Y.U.L.Rev. 383, 405 (1964). For other general discussions of federal common law, see P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 756-832 (2d ed. 1973); C. Wright, Law of Federal Courts § 60 (3d ed. 1976); Hill, The Law-Making Power of the Federal Courts: Constitutional Pre-emption, 67 Colum.L.Rev. 1024 (1967); Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797 (1957); Monaghan, The Supreme Court, 1974 Term Foreword: Constitutional Common Law, 89 Harv.L.Rev. 1 (1975); Panel Discussion, The Future of a Federal Common Law, 17 Ala.L.Rev. 10 (1964); Note, The Federal Common Law, 82 Harv.L.Rev. 1512 (1969); Note, Rules of Decision in Nondiversity Suits, 69 Yale L.J. 1428 (1960); Note, Federal Common Law and Article III: A Jurisdictional Approach to Erie, 74 Yale L.J. 325 (1964); Comment, The Invalid Growth of the New Federal Common Law Dictates the Need for a Second Erie, 9 Hous.L.Rev. 329 (1971)
 
 
 [8]
 See, e. g., Priebe & Sons, Inc. v. United States, 1947, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32; United States v. County of Allegheny, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. See generally Friendly, supra note 7, at 408-11
 
 
 [9]
 See, e. g., Textile Workers v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972
 
 
 [10]
 See, e. g. Huber Banking Co. v. Stroehmann Bros. Co., 2 Cir. 1958, 252 F.2d 945, 952-53, cert. denied, 1958, 358 U.S. 829, 79 S.Ct. 50, 3 L.Ed.2d 69; Dad's Root Beer Co. v. Doc's Beverages, Inc., 2 Cir. 1951, 193 F.2d 77; Stauffer v. Exley, 9 Cir. 1950, 184 F.2d 962
 
 
 [11]
 See, e. g., Francis v. Southern Pacific Co., 1948, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798
 
 
 [12]
 In the sequel to the Supreme Court's Illinois v. Milwaukee case this Court stated the elements of such a claim: "The elements of a claim based on the federal common law of nuisance are simply that the defendant is carrying on an activity that is causing an injury or significant threat of injury to some cognizable interest of the complainant." Illinois v. Milwaukee, 7 Cir. 1979, 599 F.2d 151, 165
 For a discussion of the federal common law of nuisance, see Campbell, Illinois v. City of Milwaukee: Federal Question Jurisdiction Through Federal Common Law, 3 Envt'l Law 267 (1973); Fourth Circuit Review Federal Common Law for Water Pollution Nuisance Abatement Confined to Interstate Controversies, 34 Wash. & Lee L.Rev. 590 (1977); Note, 26 Emory L.J. 433 (1977); Note, Federal Common Law Remedies for the Abatement of Water Pollution, 5 Fordham Urb.L.J. 549 (1977); Note, Federal Common Law and Interstate Pollution, 85 Harv.L.Rev. 1439 (1972); Note, 50 Tex.L.Rev. 183 (1971); Note, 13 Wake Forest L.Rev. 246 (1977); Note, 1972 Wis.L.Rev. 597; Comment, 49 Denver L.J. 609 (1973); Comment, 77 Dick.L.Rev. 451 (1972); Comment, The Expansion of Federal Common Law and Federal Question Jurisdiction to Interstate Pollution, 10 Hous.L.Rev. 121 (1972); Comment, 7 Suffolk L.Rev. 790 (1973); Comment, 1977 Wash.U.L.Q. 164.
 
 
 [13]
 In the sequel to the Supreme Court's Illinois v. Milwaukee case this Court held that the 1972 and 1977 amendments to the FWPCA do not preempt the federal common law of nuisance. Illinois v. Milwaukee, 7 Cir. 1979, 599 F.2d 151, 162-63
 
 
 [14]
 The legislative history of the 1972 amendments to the FWPCA demonstrates that Congress intended the term "navigable waters" to be given an expensive interpretation: "The conferees fully intend that the term 'navigable waters' be given the broadest possible constitutional interpretation unencumbered by agency determinations which have been made or may be made for administrative purposes." S.Rep.No.1236, 92d Cong., 2d Sess. 144, reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 3776, 3822. Judge Butzner, dissenting in Committee for Consideration of Jones Falls Sewerage System v. Train, 4 Cir. 1976, 539 F.2d 1006, 1011, emphasized the point:
 The legislative history (of the Water Pollution Act) discloses that Congress intended the term "navigable waters" to "be given the broadest possible constitutional interpretation . . . ." Referring to this history, the Environmental Protection Agency has interpreted the statutory definition to include "tributaries of navigable waters of the United States."
 The Environmental Protection Agency provides the following definition for "navigable waters":
 (t) "Navigable waters" means "waters of the United States, including the territorial seas." This term includes:
 (1) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;
 (2) Interstate waters, including interstate wetlands;
 (3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, and wetlands, the use, degradation or destruction of which would affect or could affect interstate or foreign commerce including any such waters:
 (i) Which are or could be used by interstate or foreign travelers for recreational or other purposes;
 (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce;
 (iii) Which are used or could be used for industrial purposes by industries in interstate commerce;
 (4) All impoundments of waters otherwise defined as navigable waters under this paragraph;
 (5) Tributaries of waters identified in paragraphs (t)(1)-(4) of this section, including adjacent wetlands; and
 (6) Wetlands adjacent to waters identified in paragraphs (t)(1)-(5) of this section ("Wetlands" means those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally included playa lakes, swamps, marshes, bogs, and similar areas such as sloughs, prairie potholes, wet meadows, prairie river overflows, mudflats, and natural ponds); provided that waste treatment systems (other than cooling ponds meeting the criteria of this paragraph) are not waters of the United States. (Emphasis in original).
 Navigable waters include: a non-navigable tributary of a navigable stream (United States v. Ashland Oil & Transp. Co., 6 Cir. 1976, 504 F.2d 1317); non-tidal mangrove swamps (P.F.Z. Properties, Inc. v. Train, D.D.C.1975, 393 F.Supp. 1370); and non-navigable mosquito canals (United States v. Holland, M.D.Fla.1974, 373 F.Supp. 665).
 
 
 [15]
 See footnote 14
 
 
 [16]
 We interpret the Supreme Court's discussion of uniformity in Illinois v. Milwaukee, 406 U.S. at 105 n.6, 92 S.Ct. at 1393 n.6, to envision a uniform floor. Obviously, a state's pollution control effort in interstate waters could be hampered by another state's lax pollution regulations. Development of a federal common law of nuisance to enforce certain standards can help alleviate this problem. If a state wants to undertake more stringent pollution control than that offered by federal statutes or common law, it can look to its own statutes and common law. The FWPCA makes clear that Congress does not intend to preempt a state's efforts at more stringent pollution control. 33 U.S.C. § 1370. See Illinois v. Milwaukee, 7 Cir. 1979, 599 F.2d 151, 162; United States Steel Corp. v. Train, 7 Cir. 1977, 556 F.2d 822, 835-36, 837-38
 
 
 *
 In connection with the court's consideration of the petition for rehearing and suggestion for rehearing in banc, the above opinion was circulated among all judges of this court in regular active service. No judge favored a rehearing in banc on the matter of the conflict between the reasoning of this opinion and the reasoning of the Fourth and Eighth Circuits in the Jones Falls and Reserve Mining cases