DISMISSAL ORDER
 

 FABER, Chief Judge.
 

 For the reasons herein detailed, the court concludes that it lacks jurisdiction over the subject matter of this dispute. Accordingly, the court is obliged to order this matter dismissed sua sponte.
 

 7.
 
 Introduction
 

 Plaintiff Norfolk Southern Railway Co. (“Norfolk Southern”) commenced this action against Energy Development Corpo
 
 *DCCCLXXVII
 
 ration (“Energy”), William D. Evans (“Evans”), and the other defendants (“mineral rights defendants”) on April 7, 2003. It alleges a federal common law cause of action grounded in the tort of nuisance. Specifically, Norfolk Southern charges that Energy and Evans (Energy’s president) have excavated and constructed on property adjacent to its railway without exercising reasonable care. As a result of this, plaintiff claims that the defendants have created a threat of imminent harm to its rail corridor in the form of a landslide that would cover its tracks and could cause a train derailment.
 

 In addition, Norfolk Southern alleges that Energy and Evans (but not the mineral rights defendants) have acted intentionally and recklessly and that Norfolk Southern is thus entitled to punitive damages. Norfolk Southern’s suit seeks an injunction, compensatory damages, punitive damages and attorney’s fees and costs. Norfolk Southern moved for a preliminary injunction on the same day that it filed suit.
 

 On April 28, 2003, the court granted a preliminary injunction in favor of Norfolk Southern. As a part of this ruling, the court determined that subject matter jurisdiction was proper “in that the matters at issue are before the court on a claim of federal common law nuisance and have a significant connection to interstate commerce.” The court has determined that this conclusion was a mistake.
 

 After the court had entered its preliminary injunction, the defendants filed their answer on May 5, 2003. In their answer, they raised eleven defenses in addition to responding to the averments of the complaint. One of the defenses was that Norfolk Southern’s claim did not, as pleaded, arise under the Constitution or laws of the United States, and another defense was that the court lacked subject matter jurisdiction. On that same date, the mineral rights defendants separately moved to dismiss pursuant to Rule 12(b)(6) on the ground that the complaint failed to state a claim against them. Thus, although the defendants have raised the issue of subject matter jurisdiction, they have not separately moved for dismissal.
 
 [1]
 

 On February 24, 2004, the court conducted a hearing to determine whether subject matter jurisdiction exists. At the conclusion of this hearing, the court invited the parties to brief the issue. On March 15, 2004, the court received a letter from Norfolk Southern’s counsel indicating that the plaintiffs did not wish to file a brief.
 

 II. Standard of Review
 

 A federal district court is a court of limited jurisdiction and has a duty to dismiss a case whenever it appears that subject matter jurisdiction is lacking.
 
 Lovern v. Edwards,
 
 190 F.3d 648, 654 (4th Cir.1999). In determining whether subject matter jurisdiction is proper, the court considers the pleadings as evidence and may also consider matters outside the pleadings.
 
 Evans v. B.F. Perkins Co.,
 
 166 F.3d 642, 647 (4th Cir.1999). The court has the power to “weigh the evidence and satisfy itself as to the existence of its power to hear the case.”
 
 Williams v. United States,
 
 50 F.3d 299, 304 (4th Cir.1995) (quoting
 
 Mortensen v. First Fed. Sav. & Loan Ass’n,
 
 549 F.2d 884, 891 (3d Cir.1977)). Dismissal for lack of subject matter jurisdiction should be granted “only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.”
 
 Richmond, Fredericksburg & Potomac
 
 
 *DCCCLXXVIII
 

 R.R. Co. v. United States,
 
 945 F.2d 765, 768 (4th Cir.1991).
 

 Federal jurisdiction over the subject matter of a controversy is not called into question simply because a party may ultimately be unable to prevail on its federal claim.
 
 Steel Co. v. Citizens for a Better Environment,
 
 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A district court should dismiss an action due to the federal claim’s inadequacy only if “the claim is ‘so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy’ ”
 
 Id.
 
 (quoting
 
 Oneida Indian Nation v. County of Oneida,
 
 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)). Dismissal is improper so long as at least one construction of the Constitution and laws of the United States will sustain the plaintiffs theory of recovery.
 
 See id.
 

 III. Analysis
 

 A. The Well Pleaded Complaint Rule
 

 Jurisdiction is proper under the federal question statute, 28 U.S.C. § 1331, only when a plaintiffs complaint “sets forth a federal question.”
 
 King v. Marriott Int’l Inc.,
 
 337 F.3d 421, 424 (4th Cir.2003). The federal question must arise from the plaintiffs claim statement, rather than “anything alleged in anticipation or avoidance of defenses” that may later be raised.
 
 Id.
 
 (quoting
 
 Taylor v. Anderson,
 
 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Federal question jurisdiction lies where federal law creates the plaintiffs cause of action or where the claim “necessarily depends on resolution of a substantial question of federal law.”
 
 Columbia Gas Transmission Corp. v. Drain,
 
 191 F.3d 552, 557 (4th Cir.1999) (quoting
 
 Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,
 
 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).
 

 B. The Federal Common Law of Nuisance
 

 The federal courts have recognized a protected legal entitlement from certain types of nuisance that, because it redresses federal instead of state interests, should be determined by reference to uniform federal law.
 
 See Illinois v. Outboard Marine Corp.,
 
 619 F.2d 623 (7th Cir.1980) (“The same day the Supreme Court decided
 
 Erie
 
 it laid the groundwork for a ‘specialized common law.’ Since that time courts have fashioned federal common law ‘when there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism.’ ” (quoting
 
 Illinois v. Milwaukee,
 
 406 U.S. 91, 105 n. 6, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)),
 
 rev’d on other grounds,
 
 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981)). The redress of nuisance by resort to federal law originally traces to the country’s need for a legal mechanism to address the effects of interstate pollution.
 
 See Missouri v. Illinois,
 
 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901).
 

 Under federal law, nuisance is an equitable action for which there are in many ways “no fixed rules.”
 
 Illinois v. Milwaukee,
 
 406 U.S. 91, 107-08, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). The essential elements of the tort are that “the defendant is carrying on an activity that is causing an injury or significant threat of injury to some cognizable interest of the complainant.”
 
 Illinois v. Milwaukee,
 
 599 F.2d 151, 165 (7th Cir.1979),
 
 rev’d on other grounds,
 
 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). The focus of inquiry is reasonableness: whether or not a nuisance exists depends upon an examination of all relevant factors to determine whether a particular grievance is in fact an unreasonable invasion of the plaintiffs entitlement.
 
 See Illinois v. Milwaukee,
 
 406 U.S. at 104-06, 92 S.Ct. 1385.
 

 
 *DCCCLXXIX
 
 • Because the context of the early federal nuisance decisions was environmental pollution that migrated across state lines, there has been some degree of confusion as to whether nuisance is actionable under federal law in a non-environmental context. A number of decisions indicate that whether nuisance is actionable at federal law depends on the gravity of the federal interests involved and the need for a uniform body of law. Under such a view, federal nuisance claims are obviously cognizable outside the context of interstate environmental pollution.
 
 See Banco Nacional de Cuba v. Sabbatino,
 
 376 U.S. 398, 426, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (“Principles formulated by federal judicial law have been thought by this Court to be necessary to protect uniquely federal interests.”);
 
 Nat’l Audubon Soc’y v. Dept. of Water,
 
 869 F.2d 1196, 1201 (9th Cir.1988) (federal common law exists for purposes of nuisance claims where “a federal rule of decision is ‘necessary to protect uniquely federal interests’ ” (quoting
 
 Banco Nacional,
 
 376 U.S. at 426, 84 S.Ct. 923));
 
 Outboard Marine,
 
 619 F.2d at 628 (7th Cir.1980) (allowing federal nuisance claim for intrastate pollution because interest vindicated is national interest in navigable waters);
 
 Nat’l Sea Clammers Ass’n v. City of New York,
 
 616 F.2d 1222, 1233 (3d Cir.1980) (essential requirement is “an overriding federal interest in uniformity”),
 
 rev’d on other grounds, Middlesex County Sewerage Auth. v. Nat’l Sea Clammers Ass’n,
 
 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981);
 
 Reserve Mining Co. v. ERA
 
 514 F.2d 492, 521 (8th Cir.1975) (plaintiff must complain of interstate pollution to air or water or must show some type of interstate health hazard).
 
 [2]
 

 The Supreme Court’s decision in
 
 Illinois v. Milwaukee
 
 discussed the bases of federal nuisance and took from
 
 Banco Na-cional
 
 the proposition that “where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law.”
 
 Illinois v. Milwaukee,
 
 406 U.S. at 105 n. 6, 92 S.Ct. 1385. The Court’s conclusion was that claims concerning the pollution of interstate water bodies presented appropriate criterion for federal adjudication.
 
 Id.
 
 That is, interstate environmental pollution was actionable as a nuisance under federal law because federal common law applied to the controversy. Thus, even though it appears that federal law allows the tort of nuisance in circumstances such as this one, federal common law must itself apply to a dispute before nuisance is actionable as a federal claim.
 

 C. Federal Common Law
 

 The instances requiring resort to federal common law are “few and restricted.”
 
 Tex. Indus., Inc. v. Radcliff Mats., Inc.,
 
 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (quoting
 
 Wheeldin v. Wheeler,
 
 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963)). Federal common law comes into play only when a controversy relates to the rights and duties of the United States as a sovereign or to “uniquely federal interests” — interests for which “the interstate or international nature of the controversy makes it inappropriate for state law to control.”
 
 Id.
 
 Significantly, neither the existence of Congressional au
 
 *DCCCLXXX
 
 thority to regulate nor a “substantial interest in regulating” an area indicate that federal common law should apply.
 
 See id.; Miree v. DeKalb County,
 
 433 U.S. 25, 31, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).
 

 Although federal regulation does not itself mean that federal common law should apply to a dispute, federal common law becomes appropriate when the use of state law would present a “significant conflict” with a specific, demonstrated federal interest.
 
 Atherton v. FDIC,
 
 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (quoting
 
 Wallis v. Pan Am. Petroleum Corp.,
 
 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966)). The Court has described a state law “conflict” as a “precondition” to the application of federal common law.
 
 Id.
 
 (quoting
 
 O’Melveny & Myers v. FDIC,
 
 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994)). Simply providing “uniformity” to an area that is regulated by the federal government, even extensively, is not a sufficient basis to invoke federal common law.
 
 See id.
 
 at 219-20, 117 S.Ct. 666 (no federal standard of care applicable to directors and officers of federal savings and loan association).
 

 D. This Suit Presents No Federal Common Law Claim
 

 When the court entered its preliminary injunction order on April 28, 2003, it found that jurisdiction was proper because the rail corridor at issue has “a significant connection to interstate commerce.” As Congressional ability to regulate an area does not itself indicate that federal common law should apply, this finding was erroneous. After reviewing the pleadings in this case, the court concludes that no specific federal interest is threatened by the application of state law to this controversy.
 

 The court first returns to the jurisdictional bases alleged in the complaint. The Well Pleaded Complaint Rule requires the jurisdictional basis of an asserted federal question claim to appear on the face of the plaintiffs complaint. The plaintiffs complaint provides three related bases for concluding that federal common law applies to this dispute.
 

 Norfolk Southern’s first basis is the significant relationship between the rail corridor and interstate commerce. The rail line is itself a part of an interstate transportation network. Second, rail operations are “extensively and completely regulated by the federal government.” Finally, Norfolk Southern points to 49 C.F.R. pt. 213, which regulates the construction and maintenance of railroads. Specifically, § 213.37 requires railroads to “control[ ]” vegetation that is upon railroad property. The plaintiff avers that this regulatory scheme evinces “an overriding federal interest in the need for uniform rules” and, moreover, that the application of state law to “railroad safety, specifically railroad track safety ... would undermine the strong federal interest in regulatory uniformity established by Congress.” As neither the power to regulate nor the existence of regulation means that federal common law should apply to a dispute, the court considers whether 49 C.F.R. § 213.37 substantially conflicts with state law remedies.
 

 49 C.F.R. part 213 generally addresses track safety standards. Section 213.37 provides that “Vegetation on rail property which is on or immediately adjacent to roadbed shall be controlled” so that it is not a fire hazard, a visual obstruction, or an interference with rail employees or the operation of the railroad.
 
 See
 
 49 C.F.R. § 213.37. Although this section certainly imposes requirements upon a railroad operator, the plaintiff has identified no specific reason why the application of state nuisance law would substantially conflict with this federal policy.
 

 Moreover, no conflict between state and federal law is apparent. West Virginia
 
 *DCCCLXXXI
 
 law allows for both private and public nuisance actions.
 
 See Carter v. Monsanto Co.,
 
 212 W.Va. 732, 575 S.E.2d 342, 346 (2002) (detailing private nuisance);
 
 Sharon Steel Corp. v. City of Fairmont,
 
 175 W.Va. 479, 334 S.E.2d 616, 625 (1985) (detailing public nuisance). Not only has Norfolk Southern failed to identify a specific reason that the application of state nuisance law would frustrate federal policy, it is unlikely that such a reason exists. The state allows private litigants to sue to redress nuisances, and nothing in the scheme of federal regulation indicates that a specific federal standard should apply to nuisance claims asserted against neighboring landowners. Although it is axiomatic that applying federal law to nuisance claims presented by railroads would increase uniformity in the federally regulated area of rail transport, the interest in uniformity is, of course, insufficient to justify the use of federal common law. If it were, “federal common law” could apply to all sorts of suits that are presently governed by state tort law. For example, an automobile accident on an interstate highway would be an excellent candidate for the application of overarching federal tort law. Such a claim would certainly implicate “interstate” interests, after all, and uniform traffic rules would certainly further the federal government’s interest in regulating the highways.
 

 Having concluded that the plaintiffs claimed nuisance does not call for the application of federal common law, the court finally considers whether this cause of action is so clearly without merit that it cannot serve as a basis for federal question jurisdiction. In order for federal common law to apply to this dispute, there must be a specific, significant conflict between federal policy and the application of state law. Not only has the plaintiff not pleaded the existence of any specific conflict, no reason is apparent.
 

 Norfolk Southern’s claim concerns the defendants’ alleged use of real property situated within West Virginia. Allowing a “federal” claim here would significantly undermine traditional notions of federalism, as the existence of a federal regulatory scheme or a demonstrable federal “interest” that could be aided by uniform law would be sufficient to override otherwise applicable state law. Based on the court’s examination of the nature of Norfolk Southern’s proffered claim, the court has concluded that there is no basis for the application of federal common law to this dispute and that a claim for the application of federal common law is without merit.
 

 IV. Conclusion
 

 The court accordingly ORDERS this action DISMISSED without prejudice. The clerk is directed to remove this matter from the court’s docket. Any pending motions are accordingly DENIED.
 

 The Clerk is directed to send copies of this Order to all counsel of record and any unrepresented parties.
 

 [1]
 

 . The answer did request generally that the complaint be dismissed with prejudice. The court notes that a dismissal for lack of subject matter jurisdiction is without prejudice.
 

 [2]
 

 . At the same time, some courts have ruled that federal nuisance is available only to remedy environmental pollution that crosses state lines.
 
 See New York v. DeLyser,
 
 759 F.Supp. 982, 991 (W.D.N.Y.1991) (no federal common law nuisance claim for any harm other than pollution, and plaintiff cannot pursue claim for obstruction to navigation);
 
 Parsell v. Shell Oil Co.,
 
 421 F.Supp. 1275, 1281 (D.Conn.1976) (claim must concern pollution affecting more than one state);
 
 Bd. of Supervisors of Fairfax County, Va. v. United States,
 
 408 F.Supp. 556, 562 (E.D.Va.1976) (plaintiff must allege interstate air or water pollution).